IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KYLE SCHWARTING,<br><br>    Plaintiff,<br><br>vs.<br><br>RAIN AND HAIL, LLC and ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>    Defendants. | 4:22-CV-3016<br><br>MEMORANDUM AND ORDER |

  This is a crop insurance case. The plaintiff, Kyle Schwarting, planted corn crops in South Dakota which never produced corn. Seeking compensation for his loss, he filed claims with the defendants, Rain and Hail LLC and Ace Property and Casualty Insurance Company. The defendants denied the claims, and the plaintiff sued for coverage. This matter comes before the Court on the defendants' motion for summary judgment. Filing 43.

I. STANDARD OF REVIEW

  Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

In late June and early July of 2019, the plaintiff planted corn on the Pine Ridge Indian Reservation in Pine Ridge, South Dakota. This planting happened later than is customary, allegedly due to unusually wet conditions in the early planting season. Filing 46-2 at 83. Because of the delayed planting, the plaintiff used short-season corn hybrid seeds, which mature faster than regular corn seeds. *See id.*

The plaintiff obtained two crop-hail policies from the defendants. Filing 44 at 2. The first policy covered roughly 1,447 acres and was effective as of July 15, 2019. Filing 44 at 3. The second policy covered roughly 559 acres and was effective as of August 1, 2019. Filing 44 at 3. The two policies contained substantively the same terms and covered direct loss caused by hail. The

plaintiff had insured the crops at $950 per acre, "substantially higher than typical hail coverage for corn." Filing 44 at 6. The policies excluded coverage for incidental or consequential damages, including delayed maturity. Filing 47-4 at 10. The policies did not cover crops damaged by hail prior to the policy taking effect, "unless agreed to in writing" by the defendants. Filing 47-4 at 9. The plaintiff cannot recover under the policies unless the percentage of loss in a given acre exceeds thirty percent. Filing 44 at 7.

On August 5, 2019, the plaintiff filed a claim for damage caused by a heavy hailstorm on August 2, 2019. Filing 46-3 at 31. The plaintiff filed a second claim on August 26 that another heavy hailstorm had caused damage on August 25, filing 46-3 at 32, and he filed a Notice of Additional Damage for crops in the August 5 claim impacted by the second storm. Filing 44 at 5. Another hailstorm allegedly occurred on July 27, 2019, but the plaintiff did not file a claim. Filing 44 at 5. The plaintiff alleges that he had a conversation with an insurance adjuster regarding the July 27 storm, but he does not allege that either defendant agreed in writing to cover any loss from that storm for acres covered by the August 1 policy. Filing 51 at 5.

On September 5, 2019, three adjusters appraised the plaintiff's hail damage claims. The adjusters determined that some acres suffered hail damage, ranging from zero to 16.5 percent, but this did not trigger the thirty percent requirement, so the policies did not cover this damage. Filing 44 at 6-7. On September 26, a different adjuster assessed the damage and determined that parts of approximately 559 acres were damaged. The plaintiff was paid $198,046 for this loss. Filing 44 at 7.

The plaintiff alleges that the hailstorms "killed some plants, bruised and damaged others, stripped and broke leaves, interfered with ear creation or pollination by damage caused to sexual parts of the plants, and in some

3

instances delayed maturity." Filing 50 at 6. On October 10, a frost killed all the crops before any corn produced a yield. Filing 44 at 8; filing 46-2 at 77. The plaintiff's crop was considered a total loss. Filing 1 at 4; filing 44 at 8. The defendants denied coverage of the loss because, according to the defendants, the loss was caused by delayed maturity from the plaintiff's late planting, and such loss is excluded by the policy. The plaintiff asserts that the loss was directly caused by hail damage, and brought suit in this Court pursuant to the policies' terms to recover for the acres of corn which did not produce a yield.

### III. DISCUSSION
#### 1. DELAYED MATURITY

The defendants first argue that the crop insurance policy excludes coverage of damage to crops caused by delayed maturity. Filing 45 at 7. The policy covers direct damage caused by hail, but excludes indirect or consequential damages such as "diseases, insect infestation, lodging, loss of markets, delayed maturity, etc." Filing 47-4. The plaintiff alleges that but for hail damage, his corn crops would have reached maturity and been harvestable. Filing 45 at 7. The issue, then, is whether the plaintiff's alleged harm is "direct" hail damage or merely indirect "delayed maturity."

If a term in an insurance policy is clear, a court gives that term its plain and ordinary meaning, "as a reasonable person in the insured's position would understand" it. *Kaiser v. Allstate Indem. Co.,* 949 N.W.2d 787, 793-94 (2020).[1] Direct hail damage includes damage caused by hail which would have occurred without the existence or intrusion of other unrelated causes or conditions. *See*

---

[1] When neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.,* 324 F.3d 955, 960 n.3 (8th Cir. 2003).

4

*Lydick v. Ins. Co. of N. America*, 187 N.W.2d 602, 605 (Neb. 1971). The policies prevent the plaintiff from recovering if his crops needed additional days to mature, because this delayed maturity, even if attributable to hail, is excluded by the policy. *See id*. But the plaintiff can recover if he can show that his crops were incapable of producing a yield because of the hail damage.

Resolving all inferences in the non-moving party's favor, the plaintiff argues that because of the hail, at least some of his crops could have *never* matured and were incapable of producing corn. *See, e.g.,* filing 50 at 6. To the extent the plaintiff seeks recovery for crops struck by hail which would have matured *eventually* but for the frost, such a claim is excluded by the policies because the frost killed the crops, not the direct damage of the hail. Rather, the plaintiff must demonstrate that his crops were unable to produce once damaged by hail. The plaintiff has sufficiently alleged, and the expert opinion of Dr. Leroy Svec supports, a factual basis that at least some of the loss was caused directly by the hail without any intervening causes. *See* filing 50 at 6; filing 46-2 at 125-26. The expert report indicates that the hail may not have killed the crop, but that severe hail damage causing leaf shredding or stalk bruising and breakage "could prevent the corn from producing grain yield." Filing 46-2 at 126. This remains a factual issue which precludes summary judgment. For these reasons, on this issue, the defendants' motion for summary judgment is denied.

## 2. DR. LEROY SVEC

The defendants have moved to exclude Dr. LeRoy Svec's testimony pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Dr. Svec has a Ph.D. and is a certified professional in agronomy who sought to determine whether the plaintiff's corn stalks would

5

have produced corn had hail not struck the stalks in the summer of 2019. Filing 46-2 at 122, 130.

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. *Id.* at 723. In exercising its gatekeeping function, the Court must make a preliminary assessment of whether the reasoning or methodology underlying the proposed expert testimony is valid and of whether that reasoning or methodology properly can be applied to the facts in issue, focusing specifically on the methodology and not the conclusions. *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000-01 (8th Cir. 2019). Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Id.* at 1001. But "cases are legion that under *Daubert*, liberal admission is prevalent and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* (cleaned up).

Dr. Svec's opinion answers a number of questions about the plaintiff's corn crop and the hailstorms at issue. Using data from "Weather Underground," Dr. Svec obtained historical weather data to determine the number of "growing degree days" available for the plaintiff's corn after it was planted. The expert assessed the corn seed hybrids that the plaintiff claimed he planted to determine how many growing degree days the seeds would have needed to produce, and whether the weather data showed an adequate number of growing degree days. Ultimately, the expert opined that, without the

6

hailstorms on July 27, August 2, and August 12, most of the plaintiff's crops would have produced a yield. Filing 46-2 at 123.

The defendants attack Dr. Svec's opinion on two primary fronts. First, the defendants claim that Dr. Svec's opinion is unreliable because he calculated projected maturity dates based on seed varieties that the plaintiff testified he did not recognize, so the defendants argue those were not the seeds he planted. Filing 45 at 2. And the defendants argue that the opinion is unreliable because, according to their own expert, Dr. Svec used weather data from a Rapid City weather station located 75 miles away from the plaintiff's acres of corn. Filing 45 at 2; filing 46-1 at 2. The plaintiff asserts that Dr. Svec assessed the seeds that the plaintiff used, and that the weather data from Rapid City was not significantly different than the weather data from Pine Ridge. Filing 50 at 9-10. There also appears to be a disagreement about whether and when certain hailstorms actually happened. Filing 45 at 18; filing 50 at 10.

The defendants' arguments, in the Court's view, go to the weight of Dr. Svec's testimony and not its admissibility. As a general rule, deficiencies in an expert's factual basis go to weight and not admissibility. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 786 (8th Cir. 2021), *cert. denied sub nom. 3M Co. v. Amador,* 142 S. Ct. 2731 (2022). The parties' disagreements are factual disputes, and in this case, the jury is the trier of fact.

The defendants primarily rely on *J.B. Hunt Transp., Inc. v. Gen'l Motors Corp.*, 243 F.3d 441 (8th Cir. 2001), to argue for excluding Dr. Svec. Filing 45 at 12. In that case, the expert's opinion was excluded because it "lacked scientific rigor" and relied on facts which were contrary to uncontradicted eye witness testimony. *J.B. Hunt,* 243 F.3d at 443. Further, the expert in that case effectively relied on his *ipse dixit* because he merely looked at photographs of

7

vehicles after an accident to opine on what happened in the accident. *Id.* And, the expert admitted that he had insufficient information and was "unable to scientifically reconstruct the accident." *Id.* But here, there are no eyewitnesses who contradict the expert's opinion. Though the parties disagree about the factual basis, the expert has clearly relied on more than his *ipse dixit*. The expert examined seed hybrids and weather data, calculated the growing degree days, and assessed whether the crops would have matured. His opinion is neither speculative nor conjectural, and the expert had sufficient information to render his opinion. *Cf. id.* The defendants' disagreement with the factual basis of the opinion does not render it unreliable.

The underlying information Dr. Svec used in forming his opinion can be vigorously tested on cross-examination, and the purported inconsistencies do not warrant exclusion. The parties' factual disputes are best sorted by a jury. The expert's opinion, and the defendants' own experts, will assist the jury in determining the cause of the plaintiff's loss.

### 3. SECOND POLICY

The plaintiff's coverage under the second policy did not take effect until August 1, 2019, after an alleged hailstorm on July 27, 2019. The plaintiff alleges that he told an adjuster about the storm and was told that "they would handle the matters." Filing 49 at 7. But the defendants argue that such a conversation does not comply with the express provision. Without written authorization from the defendants, the policies do not cover damage caused by hail which occurred prior to the policies taking effect. Filing 47-4 at 4.

An insurer may limit coverage by imposing restrictions or conditions which are not inconsistent with public policy or statute. *Poulton v. State Farm Fire & Cas. Co.*, 675 N.W.2d 665, 668 (Neb. 2004). A condition precedent is a condition which must be performed before a duty to perform arises. *Donaldson*

*v. Farm Bureau Life Ins. Co.,* 440 N.W.2d 187, 145 (Neb. 1989). Whether language in an insurance policy is a condition precedent depends on the parties' intent as gathered from the language of the contract, and such using words like "if," "provided that," "subject to," etc. *Dick v. Koski Professional Group, P.C.*, 950 N.W.2d 321, 357 (Neb. 2020).

In this case, the contract states that the defendants "do not cover crops that have been damaged by an insured peril(s). . . prior to signing the application, unless agreed to in writing by" the defendants. Filing 47-4 at 9. The word "unless" makes clear that coverage does not attach to preexisting harms without a written agreement. There is no ambiguity in the policies, and the plaintiff has made no argument to justify waiving the condition precedent, nor has the plaintiff provided any other theory which might justify recovering for that hail damage. *See* filing 50. The plaintiff has failed to satisfy the condition precedent in the policy, and so the plaintiff may not seek recovery for the July 27 hail damage to acres covered by the policy with an effective date of August 1. The defendants' motion for summary judgment will be granted in this respect.

### 4. MOTION TO STRIKE

The defendants also filed a motion to strike (filing 52) some of the plaintiff's index in opposition to the defendant's motion for summary judgment (filing 47).[2] Because the Court did not rely on the declarations at issue in the defendants' motion, the motion to strike is denied as moot.

---

[2] The Court notes that the motion to strike was both unnecessary and contrary to this Court's rules. "The opposing party shall not file a motion to strike based on alleged noncompliance with [rule 56]. Any dispute over the admissibility of evidence should be raised through an

IT IS ORDERED:

1. The defendants' motion for summary judgment (filing 43) is granted in part and denied in part.

2. The defendants' motion to strike (filing 52) is denied as moot.

Dated this 2nd day of May, 2023.

BY THE COURT:

_John M. Gerrard_ (signature)

John M. Gerrard
Senior United States District Judge

---

objection, in the objecting party's brief or responsive statement, to the facts relying on that evidence." NECivR 56.1(e).